S case on our call this morning is agenda number eight case number 1 2 3 1 5 6 William Kevin peach versus Lindsey McGovern Mr. Sussman, you ready to proceed? Alright, you may proceed I am Bob Sussman. If it pleases the court, Mr. Ripplinger, I'd like to proceed if I may. My partner Ed Adelman tried this case. Ed is recently retired and has left the St. Louis I don't have that cumulative knowledge, but I have certainly done my very best to review this case and I'm firm in my belief that this case should be reversed and the trial court judgment should be reinstated. There's three topics that I would like to discuss. One issue deals with jury, one issue deals with relevance and the standard of review, and on the standard of review I believe it's very clear that the court of appeals misapplied the statute in its opinion. But starting with the jury verdict itself, the court of appeals never tells us why 12 lay people in a rear end collision case are with their own life experiences aren't able to determine who's credible and aren't able to determine causation. I firmly believe that if all of us went to a coffee shop in our hometowns this morning and told the people there about this case, all of those people would ask are there pictures and can we look at them because they know that pictures do tell a thousand words as Mr. Edelman said in his closing argument. The pictures help tell the story, they help tell what's more probable and what's less probable. The admission of evidence is discretionary as everyone here to make the existence of any fact of consequence more probable or less probable than it would be without the evidence. And if the evidence is relevant under Rule 402 then it's admissible. The trial court, Judge Parker, properly exercised his discretion here. The photos had a tendency to make the existence of a fact of consequence, two facts actually, credibility and whether the impact caused injuries more probable or less probable than without the evidence. There was nothing so arbitrary or unreasonable in Judge Parker's decision as to be an abuse of discretion. There were a number of credibility issues in this trial. One credibility issue, the plaintiff said that the defendant struck the plaintiff from the rear at 20 to 25 miles an hour. Now I'll get to it in a moment but that's evidence without any expert testimony where the life experience of the plaintiff told him that a car was driving at 20 to 25 miles an hour and that was admissible evidence here and that was what he believed. The defendant said her foot slipped off the brake and that her Mitsubishi was fully stopped. So that's a conflict of evidence and that's an issue of credibility. A doctor testified named Templar and Templar said the injuries may or may not have been caused by the accident. His testimony itself is contradictory and requires a determination of fact. Both parties said there were minimal damages. Mr. Peach said his truck was pushed 10 to 15 feet into the intersection. The pictures show a different story and the pictures are important and they are relevant on credibility. They're relevant on causation. Both parties said there was minimal damage to both of the vehicles and that's exactly what the picture showed. Very minimal damage causing credibility to come into question. Relevancy in this instance is also related to causation and this is where we come into different conflicts between the Fifth District and the First District and actually within the districts themselves. You're going to hear about two cases from this court, the Maple case which was decided in 1992 and Pedrick which was decided in 1967. Before I get to them, however, there was a case in the Fifth District in 2010 called Ford v. Grizzle. Ford v. Grizzle cited a previous Fifth District case called Frohnebarger with approval and the Ford v. Grizzle case says there's no rigid rule that photos are always admissible or that expert testimony is always necessary for admissibility. The critical question for admissibility in the Ford case was can the jury properly relate the vehicular damage in the photos to the injury without the aid of an expert? And that's, in my mind, clear that people with life experiences can make that determination. In the Ford case, the photographs were admitted and the ruling at 648 reads, we find the jury could assess the relationship between damages to the vehicle and plaintiff's injuries without the aid of an expert. And the court went on to say that the photos were introduced to show minimal damage relative to the nature and extent of plaintiff's injuries. Ford analyzed a number of different cases. Ford analyzed the Frohnebarger case. They analyzed Jackson v. Seib in which the plaintiff said that he was rear-ended at 50 miles an hour and the photographs showed otherwise. Ford also analyzed and reviewed a case from the 1st District called Baraniak. And the Baraniak case is what the 5th District, in this instant case, relied upon because Baraniak required expert testimony. So we've got a conflict now between the 5th District and the 1st District. This case in the 5th District is wrong. First, it creates a conflict within the 5th District alone by its reliance on Baraniak's 1st District case. There's no substantive analysis in the appeals decision of Peach v. McGovern as to any distinctions with respect to Ford v. Grizzle. The appeals court here misinterprets Frohnebarger. In that case, there was a neurologist named Pantella who reviewed photos. But the court in Frohnebarger said, we find a jury could assess the relationship between damage to the vehicles and injury to plaintiff without the aid of an expert. The underlying appeal in McGovern, the opinion I should say, misinterprets Jackson v. Sieb. In that case, an orthopedist was not qualified to give an expert opinion on the severity of the impact. But the court said, we cannot say the trial court abused its discretion by admitting photos into evidence without expert testimony. So they're saying that you don't need expert testimony in photographs relating to impact and that relates to credibility and it relates to causation. Those are the same holdings as in the Ford case. The Baraniak case is at odds with another 1st District case. And that case cited in our brief is Canseo v. White from 1998. Canseo says, in that case, liability is not at issue, but the photos of plaintiff's vehicle relevant to the nature and extent of plaintiff's damages, they were admissible. So the 1st District has conflicts, the 5th District has conflicts. And I submit that a jury can sort out these issues in this type of case and determine credibility and determine causation. One of the questions posed in the underlying opinion was that the Court of Appeals said that photos may have been relevant to allow the jury to infer relative speed of vehicles. Well, the relative speed in the underlying case was not based on expert testimony at all. And just the life experience of the plaintiff disputed by the defendant. But the Court of Appeals itself is talking about the relevance of these photographs. The conflicts exist within the districts, the conflicts exist between the districts. I submit, as I said at the very beginning, that if we were to go to our local coffee shops and talk to people about this, if we were to talk to the jury, if the jury was not given the at least one person would say, why weren't there photographs? Why didn't we get to see them? Because they know that the photographs tell an important story. They are relevant and they are relevant in this case. And I'd like to wind down, if I might, on the question of the standard of review. The Maple case, the court analyzes the authority, the intertwined authority between the jury, the judge, and the appeals court and their relationship to one another. The jury issue is very important. The jury in this state came to its determination, came to its verdict, that the defendant was not at fault. That the negligence wasn't, excuse me, the causal relationship by the negligence wasn't established. That's an important factor. The jury said the defendant wasn't at fault for these injuries. The appeal was taken, a motion, excuse me, a motion for new trial was filed that was denied. An appellate court can order a new trial if the jury verdict is contrary to the manifest weight of the evidence. And a verdict is against the manifest weight of the evidence when the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based on the evidence. In this case, they were based on the evidence. The parties in the trial said there was minimal damage to each of the vehicles. The doctor was back and forth whether there was a causal relationship or not. The plaintiff clearly wasn't believed when he said he was struck at 25 miles an hour. Credibility was at issue. The jury determined the credibility issue in favor of the defendant. The jury determined the credibility, excuse me, the evidence. The court clearly did not abuse its discretion in admitting these photographs. They show a tendency to make the existence of facts of consequence, credibility, and causation more probable or less probable. And that's the standards under the Illinois Rules 401 and 402. The appellate court, what it really did was enter a judgment notwithstanding the verdict. And that's clearly wrong because there's a higher standard for a judgment notwithstanding a verdict. A judgment notwithstanding the verdict can only be limited cases where all evidence when viewed in an aspect most favorable to the opponent, that's my client, so overwhelmingly favors the movement that no contrary verdict based on that evidence could ever stand. And that's the wrong standard for a new trial. A new trial standard, it's stated in Maple, it's stated in Pedrick, and it's stated in all sorts of cases, is the manifest weight of the evidence. And in fact, the Fifth District held that this verdict was contrary to the manifest weight of the evidence, but didn't just say there'll be a new trial. It said there's going to be a new trial. Directed verdicts and judgments, NOV, are essentially the same in the context we're discussing them now. There would be a no judgment notwithstanding a verdict where any evidence demonstrating a substantial factual dispute or where there's an assessment of credibility. While there's factual disputes here, there's an assessment for a judgment notwithstanding the verdict. In addition to all of this, the Fifth District held that there must be a floor on the damages. And it held that the sanctity, if you will, of jury verdicts. Because they are telling the jury that you're not to consider causation, and it's telling the jury, it's implying to the jury by the court that it's clear that if the And that's essentially a directive from the court, and it's improper. And it takes away the ability of the jury to determine credibility. It takes away the ability of the jury to deal with causation That's why we have strict standards for questions of new trial and judgments, NOV. This jury weighed the credibility of the parties. It weighed the evidence. And Judge Parker did not abuse his discretion in denying the motion for new trial. This court should reverse the Court of Appeals opinion and simply reinstate the verdict in front of Judge Parker, which is a verdict in front of the, excuse me, if I could rephrase that for a moment. This court should reverse the opinion of the Court of Appeals and reinstate the jury verdict, which Judge Parker denied the motion for new trial, and he entered a judgment in favor of my client. And that's the right thing to do in this case. And broader pictures of the, no pun intended, the broader pictures of the pictures of the automobiles, they should be admitted. Because jurors understand questions of impact. They're drivers. They've had life experiences. They've had friends, themselves, relatives who've been in automobile accidents. This isn't some magical, mysterious bit of evidence that requires an expert on medical malpractice or products liability or things of that nature. This is within the common, everyday experience of juries. And the Fifth District went beyond its bounds in disrespecting the jury decision. The picture should be admissible. The opinion of the Fifth District should be reversed, and the original judgment in, I believe it was Marion County, should be reinstated. Thank you. Thank you, Mr. Sussman. Mr. Ripplinger? May it please the Court, Mr. Sussman. I am George Ripplinger. I represent William Kevin Peach, plaintiff in this matter. First, I would like to apologize for my phone going off. I had it turned on, do not disturb, and evidently that doesn't include phone calls. Or classical music. It was melodic. But getting back to this case, common sense is what is used as the principal reason for allowing these photographs to be used. And common sense is generally what the persons in power have and what their opponents do not have. And that's about the only thing you can say that there's in common. Common sense has no scientific basis. It truly does not. Common sense once said the world was flat. Common sense was once used to deny women the vote. Common sense was once used to discriminate against minorities and persons of color. Common sense has no meaning. It has no scientific basis. It is what you want it to be. And it really doesn't belong in the legal lexicon any more than experience in the everyday affairs of life belongs in our lexicon. What it is when you tell a jury they can do that, it gives them an excuse for ignoring the evidence. In this case, we had some photographs showing very little damage. This was admitted by both parties. We also had testimony from Dr. Templer, an anesthesiologist with a subspecialty in pain management, who said that, A, the amount, the severity of impact has very little to do with the ultimate injury of the occupant of the vehicle. He said that there could be severe injuries with minor impact. He said that this is well known, supported by the studies. He said that in this case, Mr. Peach was injured in this collision. He said that Mr. Peach was injured. He could tell that because the discs showing in the MRIs were still hydrated and that there was no spurring, which you would normally see with a back injury that predated the injury. He said that he was absolutely sure it was caused by this. Now, Mr. Ripplinger, I understand your point that your argument is that it's irrelevant to admit photos showing low impact damage to the vehicles because your point is low impact damage to a vehicle can still cause injury. Correct. And severe injury. However, what about the issue of credibility, admitting the photos for credibility? Plaintiff says that the collision occurred at a fairly significant speed of up to 30 miles an hour. Defendant says she let up on the brake after being stopped and merely tapped the plaintiff's truck. So isn't there relevance as to the photos as to the credibility of the plaintiff versus the defendant? The Baraniak case dealt with that very, I think, completely, saying that you can always come up with a credibility issue to get around the relevancy issue. In this case, there was no relevancy anywhere, any evidence of any relevancy. The force of impact, the speed of impact, no relevancy. So you're cross-examining somebody because you're saying that the difference in testimony about the speed of the vehicles is a credibility issue, but it's only a credibility issue if the speed of the vehicles is relevant. And the testimony of the doctor in this case is that a light impact can cause severe damage the same as a hard impact. So the speed of the vehicles is irrelevant to the issue of how the damage occurred. Yeah, but that begs the question as to whether or not other testimony from those same witnesses is at a different point. For example, I had neck pain as a result of this injury. Is the jury forced to believe that? And could they weigh the fact that the photos show that the impact was not significant where the plaintiff said the impact was significant to dispute the argument that he went to the doctor because he had significant neck pain right after that? The fact that the plaintiff wasn't credible in one instance can be used with respect to testimony that is unrelated to whether or not the impact caused the injuries. Well, I don't believe that you can question somebody about something that's irrelevant to the case itself. That kind of goes back to the cross-examination of the doctor. They asked the doctor if it could have been caused by something else. I objected immediately because there is no evidence of there being any other cause. And then he was allowed to completely go on and speculate. Of course, he was not present as he testified. He was not present at the collision. He has no film of the collision. So of course something else could have caused it, but there was no evidence of any other cause. Now, where you get into a question as to something that's irrelevant, applying to credibility, how do you get there? How do you ever get a chance to ask an irrelevant question? That's an objection. If somebody asks a question about an irrelevant object, you say irrelevant. You never get to the point where that's used to impeach the witness on some other cause. You can't ask it. Not if it's properly objected to. Is it your position, counsel, that photographs would never be admissible apart from expert testimony? No, ma'am. Sorry, my sinus medication is making me regret it. Counsel, did you have a witness who connected the plaintiff's injury to the car collision? Dr. Templer. I thought he equivocated a bit when he was testifying, and he really wasn't sure as to what caused the plaintiff's injury. Well, I don't usually see a physician say, yes, it was a cause, but absolutely, if they have an equivalence. He said absolutely, and he explained why he meant that. And there was no other cause shown, and he explained that a minor impact can cause serious injury. But you do admit there was a lot of conflicting evidence in this case, and the jury arrived at a verdict, and they found for the defendant. There was no conflicting evidence that a collision occurred. There was no conflicting evidence that the defendant's vehicle struck the plaintiff's vehicle. There was no conflicting evidence that he eventually went to the hospital complaining of pain that very night. There was no conflicting evidence as to the cause of that collision. The only way the jury could come there is by using their common sense to decide that it's impossible for that to occur with a minor impact. But the jury considered all the evidence, and they arrived at a verdict for the defendant, correct? Correct. So what standard of review should have been used in this case? Manifest way of the evidence. Really? I believe so. I'm not disputing the argument that the Fifth District, and I said that in my brief. I don't care if I have to go back and try the case all over again. I really don't. I don't care if there's a, if you strike down the minimum damages. In this case, there is no evidence to support a defense verdict. There simply isn't. And the only testimony of three witnesses, the doctor, the plaintiff, and the defendant. And as long as I can have a trial where we don't have the relevant evidence and the treating physician is not asked to speculate about some other cause that there's no evidence of, I'll try that case again. I don't mind that. Mr. Ripple, I don't believe you had a chance to answer Justice Garvin's question. You were taking a drink. I'm sorry. What is the, what would be the rule that you, on the admissibility of photographs? I believe that if there could be some evidence that there's relevant, scientific relevance. You're talking about saying expert testimony. Yes, ma'am. I thought you just said that. And, of course, if let's say, for example, that there's a question about whether the person died in the collision and you show a car that's mangled completely with the metal going against the seat, the dead person's limber, they might be relevant. If we're talking about, if speed becomes an issue, for example, I'm sorry, if you have an intersectional accident and there is a dispute about who entered the intersection first, then there may be some evidence of how the damage was to the vehicles to determine which vehicle came into the intersection first and which one and how fast they were going. I can imagine that there are ways of doing that. But when it comes to this, and I'm going to include within this argument a little bit of a side argument. We have a request for cross-appeal, and I know that the appellate court and this court struck the scientific articles, which I had attached to both appeals. It seems to me that when you have written articles, and I think that that was dealt with in Wayne Gross' culture, you're allowed to determine general acceptance by evidence presented to the trial court, judicial decisions of other jurisdictions if they're not on your own, and any pertinent legal or scientific commentaries. Now, I presented to the appellate court, and I believe they should have been accepted and at least considered, and I again presented them here that we have four articles. One from Society of Automobile Engineering. Are you intending to talk about the articles that we struck? Yes, sir. Don't. Okay. I will take that. Since it was a request for cross-relief, I thought that I would be able to do that. I apologize if I'm not. Well, we entered an order, right? Yes, sir. It indicated you weren't allowed to use those articles. Is that right? That's correct. Well, we didn't give our order for openers. I mean, we're – Well, I didn't know that broad my request for cross-relief. But if you say so, it does, I'm sure. Right. Yeah. And I accept that. I have a question for you, though. Sure. Back to this whole credibility thing, Mr. Ripplinger. The plaintiff testified, right, during your case. Correct. That the vehicle was going 25 miles an hour, 25 to 30 miles an hour, that hit her. Yes. Right? And in light of that testimony, the defendant going second offers not only testimony from the defendant but pictures to indicate that the vehicle did not have significant damage. How is that not relevant to address the credibility of what the plaintiff said on direct, that it was a significant collision versus a minimal collision? Because the speed of the vehicle is irrelevant. Well, then are you saying your client should not have been allowed to testify that it was going 25 to 30 when he got hit? If it was objected to, I think it would have been – it should have been – it could have been sustained. And the trial court would have been within its discretion. Do you think that's when speed is within the can of the average person? I don't believe the can of the average person understands the effects of speed on a collision, what it could do to a person in the car. There are so many variables. As Dr. Teller said, there are a zillion different variables of how you're sitting in the seat that make a difference. I understand your argument as to whether or not minimal damage can cause significant injury. I'm having trouble with your argument that – and I don't think this has been brought up – but opening the door where the plaintiff indicates that it was a significant collision, that you cannot not only offer testimony, but pictures to refute the fact that the collision was significant. I believe that the Barnett court said that that would open up almost every opportunity. You couldn't bar that if you used credibility. And the speed of the vehicles is irrelevant to any issue in the case. There's no question – nobody's arguing about how fast somebody goes, except what effect it would have on the injury. And it doesn't have any effect on the injury, therefore it's irrelevant. And the only testimony in the case is Dr. Templer, who says that the speed of the vehicle, the amount – the severity of the impact does not necessarily have an effect on the severity of the injury to the occupant of the vehicle, that very low impact collisions can cause severe injury. Now, if that's true, then it doesn't make any difference whether you're going five miles an hour or 25 miles an hour if the doctor says the injury resulted from the collision. In this case, we did. I'm kind of thinking about – I'm thinking about our students here. How does one – picture the jury. The jury is told one story by the plaintiff, told a different story by the defendant. The doctor says it could or could not have been the cause of the injury. How is the jury – you began by saying that common sense is kind of ephemeral. How is the jury supposed to sort all that out? From the evidence, from admissible evidence. And the plaintiff says, I was hit at 25 miles an hour. The defendant says, I wasn't going that fast. And the doctor says, maybe it caused it, maybe it didn't. The doctor didn't really say that. The doctor said it was caused – the injuries were absolutely caused by the collision, that they were recent, that there was no other explanation for that. The only time the doctor equivocated is when he was asked an admissible question and asked to speculate on some other cause which there was absolutely no evidence of. So is this a preponderance of the evidence problem? I mean, doesn't the plaintiff have to carry some kind of burden here? Preponderance of the evidence, yes. Maybe he was, maybe he's not. Well, again, if it had been – if the questioning about some other accident, when there's – it is inadmissible – no, I'm sorry. It is objectionable for a person to ask about some other cause of an event if there's no evidence of another cause. That's asking the witness, whether it's a doctor or another driver, to speculate. And the law says you can't do that. Now, if we don't have the doctor speculating, they have no reason to speculate either that it might be some other cause. And that's the reason asking a witness to speculate about some other cause without any evidence of another cause is objectionable and shouldn't be admitted. In this case, we had a standard objection all the way through that whole course of testimony about asking the doctor, couldn't something else have happened? Well, of course something else couldn't have happened because he wasn't there. And he said that. He's not saying that he is absolutely correct. Again, that's an improper line of questioning. Mr. Ripplinger, I didn't want to be flippant with you, but I want to get back to this cross-appeal. My note indicates – and tell me if I'm wrong – that this Court has struck plaintiff's cross-appeal that argued the appellate court erred in striking two scientific research articles that plaintiff wanted to submit to the appellate court on low-impact injuries suffered during collision. That's your understanding as well, right? Yes. And that was the reason that I indicated that we shouldn't get into these scientific articles that are therefore not part of the record since they weren't part of the appellate record. They were part of the appellate record, but they were not publicly restricted. Yes. Okay. You can proceed. I just wanted to make that clear. Okay. Thank you. In this case, I believe it makes it clear that unless there is some scientific evidence that holds that the speed of impact is relevant, that it shouldn't be allowed. It's the same thing as speculating about some other cause. There is no support for that, and it should be stricken. It shouldn't be used, and we shouldn't be allowing the juries to go out and find an excuse to rule against either plaintiff or defendant because it works both ways. Asking a jury to use common sense is giving them leeway to come up with their own conclusions, and we really should close that door. Thank you. Thank you, Mr. Ripplinger and Mr. Sussman. Just to highlight what Dr. Templar, an anesthesiologist, said, and it's on page 8 of our brief, you testified that the injuries could have been caused by this accident. Is that correct? Yes. And it's also true that they may not have been caused by this accident. Isn't that correct? Yes, that's true. It might not have been caused by the accident. It's a credibility issue right there. The jury has the opportunity to believe either of the versions that Dr. Templar provided. And if Dr. Templar had provided only one version, the jury is not required to believe the uncontroverted testimony of any witness. So I think that is a credibility issue there. It's odd that we're going to go tell a jury, don't use common sense. I suspect if I was Professor Sussman talking with, I don't know if these kids are law students or undergrads, if you were mine, but I bet they'd ask me, why not use common sense? We've all driven cars. This is going to be the only room in America where people might make an argument that pictures of an accident aren't relevant to issues of credibility and causation. And it might be the only room in America where questions of speed isn't relevant to the issues of credibility and causation to an accident. And I suspect everybody here who is a parent has urged their children to use common sense, at least on one occasion, because we all recognize the importance of common sense. Mr. Sussman, was it really proper to use the photos, though, for the first time of closing argument? They were used, they were identified in the testimony of the defendant. They were exhibits that were testified to, I think. Could we clarify this? Because I was confused. Did you finish up my question, though? I hope I did. Okay. Because my understanding is that they were identified as exhibits during the course of the examination of the defendant. Were they moved into evidence? I believe that they were. But I don't know for certain, Judge, but I believe that they were. Was there any objection? Were they shown to the jury? I'm sorry. I expect that they were, but I'm uncertain of that also. And was there any objection to the admission, the identification, admission, or publication of them at trial? Well, I know that there was an issue on the motion in limine, and the motion in limine to preclude the pictures was denied. I have the transcript. So all of this, not all of this, we know at least some of these issues got sorted out before closing argument. Is that right? Yes, I believe so, ma'am. So there's – these pictures are relevant for credibility. They're relevant for causation. And I will – the doctor was, as somebody said, on both sides of the aisle or equivocated, I think was the word used. I don't think these are the kinds of case where deep scientific evidence is necessarily required, but certainly it could have been provided in Plaintiff's case. Call the authors in of these articles, submit them. It would be an extraordinary expense, but they could do it. They carry the burden of proof. And one of the judges mentioned the words burden of proof in Mr. Ripplinger's argument. So I will conclude and conclude with how I started. The opinion of the Fifth District should be reversed and the verdict of the trial court should be reinstated. Thank you very much for your attention. Thank you, Mr. Sussman. Case number 123156, William Kevin Peach v. Lindsay E. McGovern, is taken under advisement as agenda number eight. Mr. Sussman, Mr. Ripplinger, thank you both very much for your arguments today.